IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| YIPING LUAN,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>ADVANCED TITLE INSURANCE AGENCY, L.C., MARCEL GILES; and WESTCOR LAND TITLE INSURANCE COMPANY, a California corporation,<br><br>　　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE**<br><br><br>Case No. 2:13-cv-983-DB<br><br>District Judge Dee Benson |

　　　　This matter is before the court on a motion for partial summary judgment filed by Defendant Westcor Land Title Insurance Company ("Westcor"). (Dkt. No. 32.) Defendant's motion seeks summary judgment on the ground that Advanced Title Insurance Agency, L.C. ("Advanced") and Marcel Giles were not acting as Westcor's agents with respect to any of the matters that form the basis for Plaintiff's claims, and that the necessary prerequisites do not exist for liability of Westcor under Utah Code Ann. § 341A-23a-407. The court held a hearing on the motion on June 30, 2015. At the hearing, Plaintiff was represented by Lester A. Perry. Defendant was represented by Bryce D. Panzer. At the conclusion of the hearing, the court took the motion under advisement. Now being fully advised, the court renders the following Memorandum Decision and Order.

## Background

　　　　Yiping Luan is a citizen of China who was planning to immigrate to the United States and purchase a home in Utah. (Def. Mot. at 2.) Ms. Luan asked her sister, Peggy Luan, who lived

in Utah, to help her find a home and assist with its purchase. (Id.; Pl. Resp. at 2.) Yiping Luan acquired $200,000 from her extended family in China for the purchase of the home. (Pl. Resp. at 2.) Peggy Luan contacted Marcel Giles of Advanced about closing the purchase of the home for her sister. (Id.) The Luans found a suitable home in Pleasant Grove, Utah, for a price of $205,000 and agreed to purchase it by a Real Estate Purchase Contract dated June 18, 2013. (Def. Mot. at 2.)

Due to restrictions imposed by the Chinese government, Yiping Luan had to wire the money for the purchase of the home in four $50,000 increments over a period of weeks, from May 21, 2013 to June 20, 2013, to Advanced's trust account. (Id.; Pl. Resp. at 2.) Unbeknownst to the Luans, only minutes after Mr. Giles was notified by Peggy Luan of each $50,000 transfer, unknown hackers impersonating Ms. Yiping Luan emailed Mr. Giles to immediately wire the money back to China. (Id.) Based on these email instructions, $150,000 of the funds were wired from Advanced's trust account back to China. (Def. Mot. at 2.) Ms. Yiping Luan claims that the wire transfers went to persons or entities other than her, resulting in the loss of the funds. (Id.)

On October 29, 2013, Yiping Luan filed suit against Advanced and Mr. Giles. (Dkt. No. 2.) On July 30, 2014, Ms. Luan was granted leave to amend her complaint, (Dkt. No. 18), to assert claims against Westcor, a title insurance company with which Advanced had an agency contract allowing Advanced, as an agent, to issue title insurance policies. (Def. Mot. at 3.) Ms. Luan's Amended Complaint asserts six causes of action against Westcor: (1) liability under Utah Code Ann. § 31A-23a-407; (2) vicarious liability for Advanced's alleged breach of fiduciary duty; (3) vicarious liability for Advanced's alleged breach of contract; (4) vicarious liability for Advanced's alleged negligence; (5) vicarious liability for Advanced's actions which are alleged

to constitute negligence *per se*; and (6) vicarious liability for Advanced's alleged violation of the Utah Consumer Sales Practices Act, Utah Code Ann. §13-11-1, et. seq. (Dkt. No. 19.)

**Discussion**

*Agency Relationship and Vicarious Liability*

Westcor argues that it is not liable for the acts of Advanced or Mr. Giles because the acts or omissions upon which liability is allegedly based were outside the scope of Advanced's authority as Westcor's agent. (Def. Mot. at 4.) The parties agree that the agency relationship between Advanced and Westcor is governed by an Issuing Agency Agreement, dated August 26, 2009 (the "Agency Agreement"). (Id., Pl. Resp. at 4.) The Agency Agreement describes the scope of Advanced's express authority to act as Westcor's agent.

Section 2 of the Agency Agreement, entitled "Obligations of Issuing Agent" delineates Westcor's requirements of Advanced with respect to escrow and closing transactions. Subsection (e) obligates Advanced to "keep all funds received by [Advanced] from any source in connection with transactions in which Policies of [Westcor] are to be issued, in a federally insured financial institution…designated as an 'escrow' or 'settlement funds' account…and disburse such funds only for the purposes for which the same were entrusted." Subsection (i) further provides that Advanced *shall*, "[w]here appropriate, conduct or participate in any settlements and closing of escrow transactions in which Policies of [Westcor] are to be issued in accordance with prudent practice, requirements established by [Westcor], [and] the instructions of the parties and the laws and governmental regulations applicable thereto…[.]"

Subsection (i) of Section 2 continues, however, to state that Advanced "shall not represent to the public that it is the agent of [Westcor] for the purpose of establishing and closing

any such escrow[.]" Further, Section 8(d) of the Agreement, entitled "Limitation of Issuing Agent's Authority", expressly states that Advanced is not authorized to "[r]eceive in the name of [Westcor] any funds, including escrow and settlement funds." Westcor argues that these limiting provisions make clear that Advanced is not Westcor's agent for purposes of escrow or related transactions. The court disagrees.

"Express authority exists whenever the principal directly states that its agent has the authority to perform a particular act on the principal's behalf." *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094 (Utah 1988). Section 2(i) of the Agency Agreement expressly *requires* Advanced to conduct or participate in escrow transactions in which policies of Westcor are to be issued in accordance with requirements established by Westcor. Moreover, the Agreement provides specific instructions to Advanced from Westcor about how escrow funds must be maintained and managed. The subsequent language that prohibits Advanced from representing to the public that it is Westcor's agent for escrow transactions, or from receiving funds in Westcor's name, is insufficient to disavow an agency relationship with respect to escrow transactions following Westcor's express instruction to Advanced that it *must* engage in escrow transactions in a specific manner set forth by Westcor. The Agency Agreement of the parties establishes that Advanced had express authority to act as Westcor's agent with respect to settlements and closing of escrow transactions in which policies of Westcor were to be issued.

Because the court has found that Advanced had express authority to act as Westcor's agent, it is unnecessary to determine whether Advanced had implied or apparent authority to act on Westcor's behalf with respect to escrow transactions.

*Liability under Utah Code Ann. § 31A-23a-407*

Westcor also argues that it cannot be liable pursuant to Utah Code Ann. §31A-23a-407 because the statutory prerequisites for liability have not been established. Utah Code Ann. §31A-23a-407 provides that a title insurer (like Westcor) is "directly and primarily liable to others dealing with" its title insurance producers (like Advanced) "for the receipt and disbursement of funds deposited in escrows" with the producers "in all those transactions where a commitment or binder for or policy or contract of title insurance of that title insurer has been ordered, or a preliminary report of the title insurer has been issued or delivered."

Westcor argues that an order of commitment, binder, policy, or contract of title insurance was never personally ordered by Ms. Luan from Westcor and, as such, no liability arose pursuant to Utah Code Ann. §31A-23a-407. However, Ms. Luan provided as an exhibit to her amended complaint a document entitled "Commitment for Title Insurance Issued by Westcor Land Title Insurance Company," which is signed by the President and Secretary of Westcor and dated June 5, 2013. (Dkt. No. 19, Ex. XX.) The document provides that "[t]his Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company." (Id.) Schedule A of the document is completed and specifically names "Yiping Luan" as the Proposed Insured and lists "$205,000.00" as the committed amount of the policy. (Id.)

Westcor argues that the commitment was not sent or provided to Ms. Luan until it was produced in discovery for this case and that she did not order it from Westcor personally and directly, as required by §31A-23a-407. However, a personal and specific request by the insured from the title insurer is not contemplated by the plain language of the statute. The text of the

statute is drafted in passive voice and merely requires that "a commitment or binder for or policy or contract of title insurance of that title insurer [e.g. Westcor] has been ordered, or a preliminary report of the title insurer has been issued or distributed." The plain language of the statute does not require Ms. Luan to personally and specifically request a Westcor title insurance policy in order to receive the protection provided by §31A-23a-407. Ms. Luan has provided sufficient evidence to establish that a valid commitment was ordered and issued, as her specific information is included in a document entitled "Commitment" signed by Westcor representatives and dated June 5, 2013. Furthermore, even if a personal and specific request were required by §31A-23a-407, genuine issues of fact exist as to whether Ms. Luan ordered a title commitment, either personally or through Mr. Giles as her agent, directly from Westcor.

## Conclusion

For the foregoing reasons, Defendant Westcor's motion for partial summary judgment is DENIED. Plaintiff's motion to strike portions of Defendant's reply is also DENIED, as the reply memorandum was appropriately "limited to rebuttal of matters raised in the memorandum opposing the motion." Rule 7-1(b)(2)(A).

DATED this 28th day of July, 2015.

BY THE COURT:

_Dee Benson_
Dee Benson
United States District Judge